FILED

1  MELISSA M. HARNETT (Bar No. 164309)
     mharnett@wccelaw.com
2  GREGORY B. SCARLETT (Bar No. 131486)
     gscarlett@wccelaw.com
3  JORDAN S. ESENSTEN (Bar No 264645)
     jsesensten@wccelaw.com
4  WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
   5567 Reseda Boulevard, Suite 330
5  Post Office Box 7033
   Tarzana, California 91357-7033
6  Telephone: (818) 705-6800
   Facsimile: (818) 996-8266
7
   Attorneys for Plaintiff JEFF FRIEDMAN,
8  individually and on behalf of all others
   similarly situated
9

2010 NOV 16  PM 4: 19

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

10               UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12                                      CASE NO.:  **CV 10  8787** —JHN
                                                                 ( CWx)
13  JEFF FRIEDMAN, individually and
    on behalf of all others similarly     **PUTATIVE CLASS ACTION**
14  situated,
                                          **COMPLAINT FOR:**
15              Plaintiffs,
                                          **1) VIOLATION OF THE**
16  vs.                                   **CONSUMERS LEGAL REMEDIES**
                                          **ACT;**
17  POM WONDERFUL, LLC, a
18  Delaware limited liability company;   **2) UNFAIR COMPETITION;**
    STEWART A. RESNICK, an
19  individual; LYNDA RAE RESNICK,        **3) FALSE ADVERTISING;**
    an individual; TRUSTEES OF THE        **4) BREACH OF IMPLIED**
20  STEWART AND LYNDA RESNICK             **WARRANTY;**
21  REVOCABLE TRUST; ROLL
    INTERNATIONAL                         **5) BREACH OF EXPRESS**
22  CORPORATION, a Delaware               **WARRANTY;**
23  corporation; MATTHEW TUPPER,          **6) RESTITUTION FOR UNJUST**
    an individual; and DOES 1 through     **ENRICHMENT**
24  10, inclusive,
25                                        **JURY TRIAL DEMANDED**
26              Defendants.
27
28

970590.1

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1    Plaintiff Jeff Friedman, individually and on behalf of all others similarly

2    situated ("Plaintiff"), brings this putative consumer class action against Defendants

3    POM Wonderful, LLC ("POM"), Stewart A. Resnick, Lynda Rae Resnick, Trustees

4    of the Stewart and Lynda Resnick Revocable Trust, Roll International Corporation,

5    Matthew Tupper, and DOES 1 through 10 (hereinafter collectively referred to as

6    "Defendants"), and alleges as his Complaint the follows:

7                            **SUMMARY OF COMPLAINT**

8          1.      This is a putative class action for injunctive and other related equitable

9    relief against Defendants based on their false and misleading advertising of their

10   POM Wonderful pomegranate juice products, including but not limited to juices

11   (including the "POM Wonderful 100% Pomegranate Juice"), pills, extracts and

12   concentrated liquids (hereinafter "POM Juice Products").

13         2.      Since in and around 2002, in the course of manufacturing, marketing,

14   distributing and selling POM Juice Products, Defendants, individually and acting as

15   agents, employees, servants or alter egos of each other, have committed and

16   continue to commit unfair and illicit business practices in direct violation of

17   California's consumer protection laws.  Defendant's wrongful and illegal conduct

18   includes, but is not limited to, making scientifically unsupported and deceptive

19   claims regarding the purported beneficial medical and health effects of POM Juice

20   Products, through advertising on the product package and labeling and through mass

21   media marketing, which are illegal, false, misleading and/or omit material facts.  As

22   a result, Defendants have violated California's Consumer Legal Remedies Act

23   ("CLRA," *Civil Code* §§ 1750-1784), Unfair Competition Act ("UCL," *Business &*

24   *Professions* Code § 17200 *et seq.*), False Advertising Law ("FAL," *Business &*

25   *Professions Code* § 17500-17536), Sherman Food, Drug, & Cosmetic Act

26   ("Sherman Law," *Health & Safety Code* §§ 108975-111915), statutory and common

27   law governing warranty claims, and common law governing claims for

28   restitution/unjust enrichment.

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

3.      Defendants, individually and acting as agents, alter-ego's, servants or employees of each other, make false representations in advertisements for POM Juice Products, including but not limited to, that the product is helpful in treating various ailments, including heart disease and various cancers, and is proven to advance "cardiovascular, prostate and erectile health."  Specific examples of Defendants' false and misleading advertisements for POM Juice Products are attached hereto respectively as Exhibits "A" through "M".  As a result, Defendants violate California's consumer protection statutes, including the Sherman Law, by illegally marketing POM Juice Products as drugs, even though the products have not been approved as a drug by the Food and Drug Administration ("FDA").  In this action, Plaintiff does not sue to subject Defendants to the FDA pre-market approval process, but rather, to stop the false advertising and marketing of POM Juice Products as described herein.

4.      Defendants, individually and acting as agents, servants or employees of POM, have "misbranded" POM Juice Products as having health and medical benefits which the products do not have.  A product is "misbranded" if its labeling is "false or misleading in any particular." *Health & Safety Code* §§ 110660 & 111330 (emphasis added).  It is a violation of the Sherman Law for any person to (1) misbrand any food or drug (*Id.* §§ 110398 & 111445), (2) manufacture, sell, deliver, hold, or offer for sale any food or drug that is misbranded (*Id.* §§ 110398 & 111440), or (3) receive in commerce any food or drug that is misbranded, or deliver or proffer it for delivery (*Id.* §§ 110770 & 111450).

5.      Defendants, individually and acting as agents, servants or employees of POM, further fail to honor their warranty obligations by providing a product that: (1) fails to pass without objection in the trade under the description provided; (2) is not fit for the ordinary purpose for which such goods are used; (3) is not fit for the particular purpose for which it was sold; (4) is not adequately contained, packaged, and labeled; (5) does not conform to the promises or affirmations of fact made on

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1 the container or label; and/or (6) violates the warranties contained in California's
2 Uniform Commercial Code §§ 2313, 2314, and 2315.

3      6.     Prior to and at the time he purchased POM Juice Products, Plaintiff
4 heard and saw various POM promotions, commercials and advertisements for POM
5 Juice Products. In reliance on the false, unfair, deceptive and/or unconscionable
6 claims made in said promotions that POM Juice Products purportedly increase life
7 expectancy, benefit heart health, prevent various cancers and treat numerous
8 ailments, Plaintiff purchased POM Juice Products. Plaintiff would not have
9 purchased the products had he known, at the time of purchase, that Defendants'
10 claims have no reasonable basis in fact. Plaintiff has been damaged in the amount
11 of money he spent purchasing POM Juice Products.

12      7.     On or about February 23, 2010, the FDA declared that POM Juice
13 Products are unapproved and/or misbranded drugs, and are misbranded food
14 products. On or about September 27, 2010, the Federal Trade Commission ("FTC")
15 filed a complaint against Defendants based on their false and misleading advertising
16 of POM Juice Products.

17 **JURISDICTION AND VENUE**

18      8.     This Court has subject matter jurisdiction over this class action
19 pursuant to the Class Action Fairness Act ("CAFA," 28 U.S.C. § 1332(d)) because
20 the matter in controversy, exclusive of interest and costs, exceeds $5,000,000 and is
21 a class action in which some members of the class are citizens of states different
22 from the state where Defendants are citizens.

23      9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because
24 many of the acts and transactions giving rise to this action occurred in this District
25 as Defendants: (1) reside in this District; (2) are authorized to conduct business in
26 this District and have intentionally availed themselves of the laws and markets
27 within this District through the promotion, marketing, distribution and sale of their
28 products in this District; (3) currently do substantial business in this District; and (4)

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  are subject to personal jurisdiction in this District.

2      10.   All Defendants, individually and acting as agents, servants or

3  employees of POM, are authorized to do business in California, have sufficient

4  minimum contacts with California, and/or otherwise have intentionally availed

5  themselves of the markets in California through the promotion, marketing and sale

6  of their products in California, such that the exercise of jurisdiction by this Court is

7  permissible under traditional notions of fair play and substantial justice.

8      11.   California has a significant contact or aggregation of contacts to the

9  claims at issue herein.  Plaintiff is informed and believes that the advertising at issue

10  in this action emanated from POM's offices in California.  Defendants do business

11  in California and a significant number of POM's customers are California residents,

12  and the wrongful acts alleged herein, which have affected members of the putative

13  class throughout the United States, emanated from POM's owners, managers,

14  officers, directors and/or employees located in California and were effectuated in

15  California.  The application of a forum state's laws is presumed where the defendant

16  has a "significant contact or significant aggregation of contacts to the claims

17  asserted by each member of the plaintiff class . . . ." *See Phillips Petroleum Co. v.*

18  *Shutts*, 472 U.S. 797, 782 (1985).  Here, Defendants' allegedly deceptive practices

19  originate in, and emanate from, California, and thus the application of California

20  law is appropriate under California's choice of law rules.

21                          **THE PARTIES**

22      12.   Plaintiff was and is a resident of Cleveland Heights, Ohio and a citizen

23  of Ohio.  Plaintiff purchased Defendants' POM Juice Products because he saw and

24  relied on Defendants' claims and representations regarding the purported medical

25  and health benefits of the products touted in Defendants' mass media advertising, on

26  POM's website,[1] and on the product packaging and labeling.

27

28  ---
[1] http://www.pomwonderful.com

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

13.   Defendant POM is a Delaware limited liability company with its principal office or principal place of business located at 11444 West Olympic Boulevard, Los Angeles, California 90064.

14.   Defendant POM advertises and sells POM Juice Products throughout California and the United States, including the brands that are the subject of this lawsuit.

15.   Defendant Stewart and Lynda Resnick Revocable Trust ("Resnick Trust") is the sole owner and sole member of defendant POM.  The Resnick Trust is dated December 27, 1988 as amended and Stewart A. Resnick and Lynda Rae Resnick are the sole Trustees and sole beneficiaries of the Resnick Trust and have the power to revoke or amend the Resnick Trust.

16.   Defendant Roll International Corporation ("Roll") is a Delaware corporation with its principal office or place of business located at 11444 West Olympic Boulevard, Los Angeles, California 90064.  Roll is wholly owned by the Resnick Trust and an affiliate of POM.

17.   Defendants Stewart and Lynda Resnick ("Resnicks") are sole trustees and beneficiaries of the Resnick Trust which is the sole owner of defendant POM. Plaintiff is informed and believes that Defendant Stewart Resnick is the Chairman of POM, and also the Chairman, President and a Director of Roll.  Plaintiff is informed and believes that defendant Lynda Resnick is a Director of Roll. Plaintiff is further informed and believes that the Resnicks reside at 9481 Sunset Boulevard, Beverly Hills, California 90210.

18.   Plaintiff is informed and believes that Defendant Matthew Tupper is the President and Chief Operating Officer of POM, and resides at 3060 Franklin Canyon Drive, Beverly Hills, California 90210.

19.   The true names and capacities, whether individual, corporate, associate or otherwise of defendants DOES 1 through 10, inclusive, and each of their roles in this case, are unknown to Plaintiff, who therefore sues said Defendants by such

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   fictitious names. Plaintiff further alleges that each of said fictitiously named

2   defendants is in some manner responsible for the conduct, acts and occurrences set

3   forth herein. Plaintiff will amend this Complaint to show their true names and

4   capacities when the same are ascertained, as well as the manner in which each

5   fictitiously named defendant is responsible.

6       20.   Plaintiff is informed and believes that each of the Defendants,

7   individually and in concert with each of the other Defendants, formulates, directs

8   and/or controls the policies, acts, and practices of POM, including the unfair, illegal

9   and fraudulent acts and practices alleged in this Complaint.

10      21.   Plaintiff is informed and believes, and thereon alleges, that at all

11  relevant times herein each of the Defendants was the agent, servant, employee,

12  subsidiary, affiliate, partner, assignee, successor-in-interest and/or representative of

13  each of the remaining Defendants, and was acting in the course and scope of such

14  capacity in committing the wrongful acts alleged herein.

15      22.   Plaintiff is informed and believes, and thereon alleges, that at all times

16  mentioned, each of the Defendants is and has been the partner, joint venturer, alter

17  ego, and/or co-conspirator of each of the other Defendants. In committing the

18  wrongful acts alleged herein, Defendants planned and participated in and furthered a

19  common scheme by means of false, misleading, deceptive and fraudulent

20  representations to induce consumers to purchase POM Juice Products. Defendants

21  participated in the making of such representations in that each did disseminate or

22  cause to be disseminated said misrepresentations.

23      23.   At all relevant times herein, a unity of interest in ownership and other

24  interests between each of the Defendants existed such that any separateness ceased

25  to exist between them. The exercise of complete dominance and control over the

26  other Defendant entities and their properties, rights and interests, rendered such

27  entities as mere shells and instrumentalities of each of the other Defendants.

28  ///

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

970590.1

7

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

24.   Each of the Defendants named in this action has played a role in the unlawful, fraudulent and unfair business practices that give rise to this lawsuit.

25.   Defendants placed products into the stream of commerce that do not have the health benefits, characteristics or qualities that are represented through POM's marketing campaign.

26.   POM produces, markets, and sells POM Wonderful brand pomegranate juice, juice blends, teas and extracts.

27.   Since 2002, POM has promoted the consumption of its POM Wonderful brand 100% pomegranate juice products to consumers as having special health benefits, including but not limited to, the prevention, mitigation, and/or treatment of prostate cancer, cardiovascular disease, erectile dysfunction, and other age-related medical conditions.

28.   POM also has promoted the consumption of its POM Wonderful brand 100% pomegranate juice beverage product to consumers as an all-purpose health elixir that can prevent and/or delay the effects of advancing age, prolong youth, and prolong life.

29.   POM claims in its advertising that its POM Wonderful brand 100% pomegranate juice beverage product is healthier than other beverages, including other 100% juice beverage products.

30.   POM claims in its advertising that the juice from the "Wonderful" variety of pomegranates used in POM's 100% pomegranate juice beverage products has special antioxidant powers to protect health, promote good health and prevent disease which are not found in other foods or beverages, including the juice from other pomegranate fruit varieties.

31.   POM claims in its advertising and product labelling that its health and medical claims for its pomegranate juice are "backed by $25 million in medical research," "backed by $25 million in bulletproof medical research," or that POM is

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  "the only pomegranate company whose products are backed by $34 million in

2  scientific research"[2].

3      32.   Not only does POM claim that its pomegranate juice prevents and

4  mitigates diseases, but that competent and reliable scientific evidence *proves* that

5  POM pomegranate juice prevents and mitigates diseases, prolongs life, and has

6  special antioxidant powers and health and medical benefits not available from other

7  foods or beverages.  The prevalence of such research and continued assurances from

8  POM regarding the validity of medical research would cause a reasonable consumer

9  to believe such statements, and did, in fact, cause the Plaintiff to believe and rely

10  upon such statements in making the decision to purchase POM Juice products.

11      33.   POM's disease prevention and disease mitigation claims are false,

12  deceptive, unfair and unconscionable because there is no competent and/or reliable

13  scientific evidence and/or substantiation for POM's mitigation, treatment and/or

14  prevention of disease claims.

15      34.   In 2005, the National Advertising Division (NAD) of the Council of

16  Better Business Bureaus found that the medical research POM relied on was

17  inadequate to substantiate POM's claim that drinking eight ounces per day of POM

18  pomegranate juice can reduce arterial plaque by up to 30% or prevent plaque build-

19  up in healthy people.

20      35.   In 2006, the NAD found that POM's research did not substantiate its

21  claims that POM juice contains "more naturally occurring antioxidants than any

22  other drink," and that drinking its pomegranate juice can help prevent premature

23  aging, cancer, heart disease, arterial plaque build-up, stroke, Alzheimer's disease, or

24  any other disease.

25      36.   In 2009, the United Kingdom's Advertising Standards Authority (ASA)

26  "considered the evidence submitted by POM Wonderful to support the antioxidant

27  benefits of pomegranate juice but concluded that it fell short of showing any direct

28  [2] http://www.pomwonderful.com/about/company

1  relation between consuming the product and a longer life." As a result, the ASA

2  found a POM advertisement, "and particularly the claim 'Cheat death,' misleadingly

3  exaggerated the health benefits likely to be achieved by drinking the product."

4      37.   POM lacks competent and/or reliable scientific evidence that

5  consuming its pomegranate juice has meaningfully greater antioxidant potency and

6  related health benefits than other juices, including other pomegranate juices.

7      38.   POM failed to disclose to consumers that the majority of the studies

8  cited by POM in support of its health claims were actually paid for by POM, lacked

9  independence and were not properly constructed to ensure accurate results.

10     39.   POM falsely claims that its pomegranate juice has medically proven

11  benefits in the mitigation, treatment, and/or prevention of serious chronic disease.

12     40.   POM falsely claims that its pomegranate juice is proven to prevent

13  and/or mitigate atherosclerosis, heart attacks and related health conditions.

14     41.   POM makes the following false, unfair, deceptive and/or

15  unconscionable advertising claims for POM Wonderful pomegranate juice on its

16  website and both in its print and in-store advertising:

- Medical research shows that drinking 8 ounces per day of POM pomegranate juice can result in improved blood flow to the heart;

- Medical research shows that drinking 8 ounces per day of POM pomegranate juice can decrease arterial plaque by 30% (on a website page depicting a bottle of POM hooked to an intravenous apparatus like a blood transfusion);

- POM Wonderful pomegranate juice is "heart therapy."

24     42.   The false, unfair, deceptive and/or unconscionable message portrayed

25  by POM advertising and promotion is that the consumption of POM pomegranate

26  juice, is scientifically proven to prevent and/or mitigate atherosclerosis and reduce

27  heart attacks.

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

970590.1

10

43.   These claims are false, unfair, deceptive and/or unconscionable.  In fact, competent and/or reliable scientific research does *not* establish that POM Wonderful brand pomegranate juice prevents and/or mitigates atherosclerosis or heart attacks under the conditions of use represented in POM's marketing claims.

44.   POM falsely, unfairly, deceptively and/or unconscionably made claims that its pomegranate juice is scientifically proven to prevent and/or mitigate cancer and other prostate health related conditions

45.   POM's website page entitled, "The Truth About Our Pomegranates," claims, under the heading "Backed by Science," that "To date, numerous published medical studies have documented the benefits of drinking pomegranate juice, benefits that include improved. . . prostate health."

46.   One of POM's opening website animations begins with a comic-strip-style message, "HURRY!  Prostates everywhere are in danger!"  Bottles of POM juice then zoom across the screen and a new message then appears, issuing from a POM bottle: "I'm off to save PROSTATES!"  This is accompanied by the tagline, "The Antioxidant Superpower.  Learn about POM's promising health benefits."

47.   Clicking on the animation's "Learn about POM's promising health benefits" link takes the viewer to POM's "Health Benefits" page which summarizes, among other things, research purporting to show that consuming POM pomegranate juice may slow the progression of prostate cancer.

48.   In combination, the animation and its associated links claim that medical research establishes that POM juice rescues prostates from the danger of disease - i.e., that POM pomegranate juice prevents or mitigates prostate disease. The advertisement coupled with the research funded by POM and cited on the website would cause a reasonable consumer to believe such statements, when in reality these statements have no reasonable basis in fact.

49.   POM's website page on "Cancer" shows a bottle of POM juice with the heading, "Cancer - Emerging Science" and the claim that antioxidants in POM

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  pomegranate juice and POM tea "might slow or help prevent the development of

2  cancer."

3      50.    A POM commercial states, "Pomegranates contain powerful

4  antioxidants needed to prevent cancer and disease" and depicts actors wearing white

5  lab coats consuming POM pomegranate juice as a convenient way to obtain these

6  cancer prevention benefits.

7      51.    These advertisements represent claims that medical research establishes

8  that consuming POM pomegranate juice mitigates, treats, and/or prevents prostate

9  cancer.

10     52.    These claims are false, unfair, deceptive and/or unconscionable.

11  Contrary to POM's claims, there is no reasonable basis in fact that POM

12  pomegranate juice mitigates, treats, prevents, or otherwise slows the progress of, or

13  cures prostate cancer or any other prostate disease.  POM's false, unfair, deceptive

14  and/or unconscionable claims that medical research shows POM juice to be

15  effective in mitigating, treating, and/or preventing prostate cancer and other prostate

16  disease are especially pernicious in view of the prevalence and gravity of these

17  diseases.

18     53.    POM falsely, unfairly, deceptively and unconscionably claims that its

19  pomegranate juice is proven to prevent or delay aging.

20     54.    POM's website page entitled "Health Benefits: Aging" advertises that

21  POM has been proven to maintain youth, defer aging, and prolong life.

22     55.    Other POM advertisements and promotional materials disseminated by

23  POM, including but not limited to in-store advertising, claim that POM juice

24  extends life, including advertisements bearing the following messages:

25        •    "Cheat Death." [showing POM bottle wearing a broken hangman's

26             noose]

27        •    "Death defying."

28        •    "Life support." [showing POM bottle hooked to IV unit]

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

- "SAVING LIVES . . . one mortal at a time."

56.   All of these advertisements constitute false, unfair, deceptive and/or unconscionable claims that medical research has shown POM pomegranate juice to be effective in slowing the effects of aging, warding off death, and/or extending or prolonging life.  There is no competent and/or reliable scientific evidence that consuming POM pomegranate juice provides consumers with special benefits in delaying death and/or prolonging life.  POM falsely, unfairly, deceptively and/or unconscionably made claims that its pomegranate juice is scientifically proven to prevent, mitigate, and/or cure other diseases.

57.   Among other diseases and conditions discussed on its website, and in its advertising and promotional materials, POM claims that scientific and medical research proves that POM pomegranate juice lowers blood pressure.  POM's website also claims disease benefits relating to Alzheimer's disease, dementia, arthritis, and diabetes among others, as conditions treatable with POM pomegranate juice.

58.   The references to various diseases and conditions on POM's website and in its advertising and promotional materials, in the context of POM's constant references to its pomegranate juice being "backed" by $25 million in bullet proof medical research, are designed to, and do, communicate to consumers that drinking POM pomegranate juice has been proven to have special benefits in mitigating, treating and/or preventing age-related diseases, including arthritis, dementia, Alzheimer's disease, and diabetes.  These claims are false, unfair, deceptive and/or unconscionable because these statements would cause a reasonable consumer to believe such statements, without a reasonable basis in fact.

59.   POM's other advertisements and promotions build on and implicitly reference these specific disease prevention and cure claims by portraying POM pomegranate juice as an all-purpose health elixir that has special power to prevent and/or mitigate chronic diseases associated with aging, and thereby prolong life.

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

970590.1

13

1    ///

2        60.    For example, POM's website advertisement page, [3]contains the

3    following claims:

- "Cheat death." [Showing POM bottle wearing broken hangman's
  noose]
- "Death defying."
- "Decompress." [Showing POM bottle in blood pressure testing
  device]
- "Forever young."
- "Health Angel."
- "Heart therapy."
- "Holy Health! $25 million in medical research."
- "Life guard."
- "Life preserver."
- "Life support." [showing POM bottle hooked to IV unit to resemble
  a blood transfusion]
- "Relax, you'll live longer."
- "SAVING LIVES . . . one mortal at a time."
- "Lucky I have super HEALTH POWERS!"
- "Survival kit."

21        61.    On the front page of POM's website, the consumer is presented with

22    one of a rotating series of animations.  These each feature a bottle of POM juice in

23    the guise of a super-hero character accompanied by the tagline "The Antioxidant

24    Superpower" and accompanied by messages such as:

- "Have no health fear . . . POM IS HERE!"
- "Risk your health in this economy!?! NEVER!"

---

[3] http://www.pomwonderful.com/about/ads

14
PUTATIVE CLASS ACTION COMPLAINT

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1     •   "Prostates everywhere are in danger . . . I'm off to save

2         PROSTATES!"

3   Each animation prompts viewers to follow a link to "learn about POM's promising

4   health benefits," where the more detailed medical claims described in this

5   Complaint are presented.

6       62.   A POM print advertisement for POM pomegranate juice claims: "In a

7   time of major health problems, one 16-ounce hero will unleash its **incredible**

8   **healing powers:** POM Wonderful® 100% pure pomegranate juice. Backed by an

9   unheard-of $25 million in medical research, The Antioxidant Superpower® sweeps

10   into action to help fight for heart and prostate health." (Emphasis in original.)

11       63.   POM advertises that its pomegranate juice is "clinically tested."

12       64.   POM advertises that its medical research is "bulletproof," which

13   implies to consumers that the research conclusively proves the health benefits

14   claimed by POM.

15       65.   An example of the lack of credibility and deceit employed by POM in

16   defense of their disease curative claims is the support they site for Erectile

17   Dysfunction ("ED"). In a study published in the Journal of Urology in 2005

18   (*Oxidative Stress in Arteriogenic Erectile Dysfunction: Prophylactic Role of*

19   *Antioxidants*), the test consisted of an experiment using seven (7) rabbits who were

20   induced into ED "by balloon injury of iliac arteries." Penile erection was then

21   "examined by electrical stimulation of the cavernous nerve." The study concluded

22   that pomegranate juice was one of several dietary products that may be a useful tool

23   in preventing or treating ED. This finding fails to establish competent or reliable

24   scientific evidence necessary to support POM's claims.

25       66.   In an additional study relied on by POM to support its ED claims

26   (*Efficacy and Safety of Pomegranate Juice on Improvement of Erectile Dysfunction*

27   *in Male Patients with Mild to Moderate Erectile Dysfunction: A Randomized,*

28   *Placebo-controlled, Double Blind, Crossover Study*), the authors admitted: "The

1  limitations of this pilot study include cohort size, treatment period duration, and

2  compliance issues. . . **the results of this study did not achieve statistical**

3  **significance** . . ." (Emphasis in original.)

4          67.    Moreover, POM's human research studies are based on a small sample

5  size, frequently less than one hundred people, and in many cases fewer than twelve

6  subjects.  These studies also include people who are already suffering from a disease

7  and often measure variables whose effects are indirect and unclear.  Conversely, the

8  FDA prefers studies that are based on a large sample for studies.  The agency seeks

9  to measure individuals that do not have conditions that a consumer seeks to avoid

10  and looks to unambiguous events or surrogate markers for a disease to establish

11  reliable studies.[4]

12          68.    Even when not paired with an explicit medical claim, the claims that

13  POM Juice Products are backed by, or is the subject of, "millions of dollars" worth

14  of "medical" research and "clinical" testing communicates to consumers that POM

15  Juice Products have medical benefits for the mitigation, treatment, and/or prevention

16  of disease that are proven by competent and reliable scientific evidence.

17          69.    These advertisements discussed in paragraphs 55 through 58 herein,

18  both independently and in the context of POM's more explicit disease prevention

19  such as the studies referenced in paragraphs 60 through 62 herein, and cure claims,

20  communicate to consumers that POM Juice Products are not just a food, but a

21  medicine that is proven to ward off and slow the progress of serious and often fatal

22  disease.

23  / / /

24  / / /

25  / / /

26

27  [4] David Brown, *It's a 'Life Preserver'! It's 'Death-Defying'! It's . . . A Super Ad Campaign!*
28  The Washington Post, April 21, 2009, http://www.washingtonpost.com/wp-
dyn/content/article/2009/04/20/AR2009042002428.html.

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

70.     POM falsely, unfairly, deceptively and/or unconscionably claims that POM Wonderful 100% pomegranate juice has nutritional and disease related benefits that are superior to other juices.

71.     POM prices its juice products at a higher price-point than comparable juices.  POM's false representations have allowed its juice products to achieve sales that exceed that of many competitors despite the higher price charged for POM juice products.  Consumers, like Plaintiff, have been willing to pay the higher price for these products because they believed that POM had special health benefits due to the misrepresentations by POM.

72.     A POM magazine advertisement in a March 2009 issue of *Yoga Journal* claims: "Made with 100% pure pomegranate juice and fortified by $25 million in medical research, it's the only juice on the planet powerful enough to fight the good health fight."

73.     In this and other advertisements, POM claims that its pomegranate juice has been proven by medical research to offer disease-fighting benefits conferred by no other juice.

74.     This claim is false, unfair, deceptive and/or unconscionable because there is no competent and/or reliable scientific evidence that POM pomegranate juice confers nutritional or disease-related benefits that any other juices "on the planet" do not.

75.     POM also claims that its pomegranates are nutritionally superior to pomegranates used in other products.  In a page entitled "Wonderfully Superior" on its website, POM claims that "Juice from Wonderful variety pomegranates is extremely high in polyphenol antioxidants," implying that juice from other pomegranates is not extremely high in polyphenol antioxidants.

///

///

///

970590.1

PUTATIVE CLASS ACTION COMPLAINT

76. POM also states, in discussing the "medical research" that supports its disease-related claims, that:

> **All of these studies featured patients who drank POM Wonderful 100% Pomegranate Juice, not any other brands.** Since POM is totally different from other pomegranate juices (see below), that means ours is the only one you can trust to deliver genuine pomegranate health benefits.

77. POM further states, "Actually, we are the only pomegranate juice backed by any medical research at all" and "all of the research has been done on POM Wonderful 100% pomegranate juice." Those statements are false, unfair, deceptive and/or unconscionable.

78. Numerous POM statements in advertising and promotional materials repeat this false, unfair, deceptive and/or unconscionable claim that POM's "Wonderful" variety pomegranates have been shown by research to be unique and nutritionally superior to all other pomegranates. The purpose and effect of these misrepresentations is to falsely disparage all competing pomegranate products. There is no competent and/or reliable scientific evidence that the POM variety of pomegranate used in POM's products is nutritionally superior to, or confers greater health benefits than, the pomegranates used by POM's competitors.

79. By making such claims, POM causes consumers, including Plaintiff, to believe that buying POM's products, even at higher price points, confers significantly more health benefits on the purchaser than comparable products at lower price points.

80. POM's marketing presents a false and misleading picture to consumers that POM products confer significant, scientifically proven health benefits, that are substantially different from other juices, including other pomegranate juices, in

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   these health benefits, and are bottled directly from freshly squeezed pomegranates,

2   without any intermediate concentrate/reconstitution process.

3        81.   POM maintains a webpage entitled "From Tree to Bottle," available

4   under the "POM Truth" tab of the POM website, http://www.pomegranatetruth.com.

5   The page contains a video that purports to depict POM's juice manufacturing

6   process.  The video, however, omits the pasteurization and concentration-

7   reconstitution process.

8        82.   The video is approximately one minute and five seconds.  It begins

9   with a farmer cutting a pomegranate from a tree and placing the fruit in a sack.  The

10  worker then boards the back of a truck and empties his sack of pomegranates into a

11  container containing other pomegranates.  Next, the video shows a conveyor belt

12  filled with pomegranates being washed and sorted onto different conveyor belts and

13  then several pomegranates are funneled into large pipes.  From the pipes, juice

14  appears and drains into a large vat of dark red liquid.  The video depicts plastic

15  tubes being compressed by a machine into the POM bottle shape.  The bottles pass

16  along the conveyor belt and are filled with red liquid, capped and date coded by

17  laser.  After coding, the caps of nine bottles are shown with the camera zooming out

18  to images of large cardboard boxes.  The boxes are raised to where the bottles are

19  suspended and then dropped back down onto the conveyor belt.  Presumably, the

20  boxes have been filled with the finished POM bottles.

21       83.   In its entirety, the voice over the video image states: "Welcome to

22  POM Wonderful Orchards in sunny central California.  Here we grow and hand pick

23  each wonderful variety pomegranate that goes into our juice.  Once the

24  pomegranates are harvested, they are transported to our nearby juicing facility where

25  they are washed, sorted, and conveyed to the juicing machines.  Our state of the art

26  equipment delivers just the right amount of pressure to release the naturally rich red

27  juice.  Much of the healthy antioxidant goodness comes from crushing the whole

28  fruit, husk and all.  We even make and decorate our own distinctive bottles, shaped

like two pomegranates stacked on top of each other. Then, we fill the iconic bottles with 100% natural pomegranate juice. We don't add sugar or coloring, like some other pomegranate juice brands. In fact, every 16 ounce bottle contains the juice of four whole pomegranates. Once filled, the bottles are sealed and date coded to maintain freshness. They are sorted into cases, loaded into refrigerated trucks, and shipped to a store near you. We are dedicated to ensuring quality from start to finish, to give you healthy, authentic pomegranate juice you can trust. Enjoy!"

84.   In addition, POM misleads consumers in its print and internet advertisements by representing that its juice is not from concentrate. POM packages its product in bottles that are shaped like two pomegranates on top of each other. On the actual product, the top bulb contains the brand name, "POM Wonderful" and the name of the juice, "100% Pomegranate Juice;" the bottom bulb contains the words "from concentrate." In its advertisements, POM prominently displays the entire front of the bottle, including its brand name and the name of the juice, but POM conceals the language that otherwise appears on the bottom of the bottle. The concealed language includes the text that the product is "from concentrate." POM conceals this language in its print and online advertisements, and when the advertisements are viewed as whole, they mislead consumers into believing that POM's juice is not from concentrate. For example, one of POM's webpage greetings states, "Someone save me from fake pomegranate juices!" and is followed by the text, "Have no health fear, POM is here!" The greeting purports to show the front of POM's bottle, including the label on top of asserting that the juice is 100% pomegranate juice, yet the bottom portion of the image conceals the "from concentrate" language that otherwise appears on the bottle.

85.   POM's website further states under the "FAQ" tab, in the "Health & Nutrition" section, "[s]ince POM Wonderful pomegranate juice is a refrigerated product, treat it as you would fresh milk or fresh orange juice! POM Wonderful pomegranate juice must refrigerate at all times." Yet, POM's juice is not fresh - it is

WASSERMAN, COMDEN, CASSELMAN & ESENSTEIN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  from concentrate.  POM's promotion of its product on its website, therefore, causes

2  reasonable consumers to believe that its juice is freshly squeezed, when it is not.

3      86.  As another example, in the January/February 2008 issue of Health

4  magazine, POM's advertisement exclaims "Pure science."  Next to this phrase, the

5  advertisement purports to show the front of the POM bottle, in its entirety, yet the

6  "from concentrate" language is concealed.  The depiction of POM's product in the

7  advertisement misleads the viewer into believing the product is not from

8  concentrate.

9      87.  In the November 2008 issue of Prevention magazine, POM's

10  advertisement explicitly states "Ingredients: Contains no trickery, deceit, excuses,

11  shams, duplicity, fabrication, white lies, exaggeration, overpromises, tall tales or

12  spin."  Yet the depiction of POM's product conceals that it is "from concentrate."

13  The advertisement purports to show the front of the POM bottle, in its entirety, yet

14  the "from concentrate" language is concealed.

15      88.  In addition, in the November 2008 issue of Health magazine, POM's

16  advertisement provides "Imitation may be sincere.  But is it pure?" Again, POM's

17  advertisement conceals the fact that it is "from concentrate."  The advertisement

18  leaves the viewer with the impression that they are seeing the entire front of POM's

19  bottle, yet the words "from concentrate" that would otherwise appear on the bottom

20  of POM's bottle are concealed.

21      89.  In the June 2009 issue of Health magazine, POM's advertisement states

22  "100% PURE pomegranate juice to the rescue!" Again the depiction of POM's

23  product conceals that it is "from concentrate."  The advertisement purports to show

24  the front of the POM bottle, in its entirety, yet the "from concentrate" language is

25  concealed.

26  ///

27  ///

28  ///

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

90.     POM's print and online advertisements mislead consumers into believing POM's juice is not from concentrate.  POM continues to circulate these misleading advertisements in magazines and on the internet as it has done in prior years.

## FDA REGULATORY ACTION AND FTC LAWSUIT

91.     In 2010, the FDA sent a warning letter to the president of POM declaring the claims made by POM, through their labelling and website, constitute serious violations of the Federal Food, Drug, and Cosmetic Act (the "Act") and the applicable regulations in Title 21, Code of Federal Regulations.  The FDA cautioned that the claims made by POM established the product as a drug, because it appeared the intended use was for the mitigation, treatment or prevention of disease and these claims had not been substantiated through any valid medical research.  As such, the FDA found that the marketing of this product was in direct violation of the Act.

92.     On or about September 27, 2010 the FTC filed an administrative complaint against Defendants herein.  (The "FTC Complaint," *In re POM Wonderful LLC, et al.*, FTC docket No. 9344, (September 24, 2010).)  The FTC Complaint alleges that Defendants advertised unsubstantiated health claims in violation of the Federal Trade Commission Act.  Specifically, the FTC alleges POM's conduct "constitute[s] unfair or deceptive acts or practices, and the making of false advertisements, in or affecting commerce, [is] in violation of Sections 5(a) and 12 of the Federal Trade Commission Act."

93.     According to the FTC Complaint, Defendants have made the following unfair, deceptive, and/or false advertising claims, expressly or by implication, in order to induce unwitting consumers into purchasing their POM Juice Products:

(1)     Drinking eight ounces of POM Juice, or taking one POMx pill or one teaspoon of POMx Liquid daily prevents or reduces the risk of heart disease by (a) decreasing arterial plaque, (b) lowering blood pressure, and/or (c) improving blood flow to the heart;

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

    (2)    Drinking eight ounces of POM Juice, or taking one POMx pill or one teaspoon of POMx Liquid daily prevents or reduces the risk of prostate cancer by prolonging prostate-specific antigen doubling time ("PSADT");

    (3)    Drinking eight ounces of POM Juice daily treats erectile dysfunction.

## PLAINTIFF'S RELIANCE ON DEFENDANTS' MISREPRESENTATIONS

94.    In making the claims regarding their POM Juice Products as alleged herein, Defendants have represented, either expressly or by implication, that they possess and rely upon a reasonable basis that substantiates these claims. In truth and in fact, Defendants did not possess or rely on any reasonable basis that substantiated these claims, making the claims both false and misleading.

95.    Plaintiff purchased POM Juice Products from retailers located in Cleveland Heights, Ohio. He did so in reliance on Defendants' false and misleading claims about the ability of the products to cure, mitigate or prevent health and medical problems. Those claims and representations were material to Plaintiff's decisions to purchase and consume the products. Plaintiff's reliance was reasonable given Defendants' explicit, specific and detailed claims about the products.

96.    Plaintiff was misled by Defendants' advertising and labeling claims into purchasing and paying for products which were not what they were represented to be, and as a direct result Plaintiff has suffered actual damages in that Plaintiff has been deprived of the benefit of his bargain, and has spent money purchasing POM Juice Products at premium prices when the actual value of the products was much less the price charged. Plaintiff is informed and believes that other consumers also relied on the misrepresentations in Defendants' national and uniform advertising campaign for their POM Juice Products, and also suffered actual damage as result thereof.

/ / /

970590.1

**PUTATIVE CLASS ACTION COMPLAINT**

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033



97.   Plaintiff is further informed and believes that Defendants have reaped substantial profits as a result of their wrongful conduct, at the expense of consumers like Plaintiff and other members of the putative class.  Defendants should not be allowed to retain their ill-gotten gains.

## CLASS ACTION ALLEGATIONS

98.   Plaintiff brings this action on behalf of himself, and as a class action on behalf of the following Class (the "Class"):

All individuals who, since the four years prior to the filing of this action ("Class Period") to the present, purchased POM Juice Products.

99.   Although Plaintiff does not know the exact number of the members of the Class, Plaintiff is informed and believed and on that basis alleges that due to the nature of the commerce involved, the members of the Class are sufficiently numerous in number, most likely tens of thousands of persons, that joinder of all Class members is impracticable.

100.   Plaintiff's claims are typical of the Class claims in that Plaintiff and the Class Members each purchased POM Juice Products since the last four years, and the products purchased by Plaintiff and the Class Members contained unfairly deceptive and misleading representations.

101.   Numerous questions of law and fact are common to the Class, which predominate over any individual issues.  Questions of law and fact which are common to the Class include, without limitation, the following:

a.   are the claims that POM made and is making regarding pomegranate juice and juice products false, unfair, deceptive and/or unconscionable;

b.   is POM making claims that its pomegranate juice or juice products have certain performance characteristics, uses or benefits that they do not have;

/ / /

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

c.     is POM making claims that its pomegranate juice or juice products are of a particular standard, quality and/or grade, when they are not;

d.     is POM supplying pomegranate juice or juice products not in accordance with its representations;

e.     has POM engaged in false, unfair, deceptive and/or unconscionable acts or practices in connection with a consumer transaction;

f.     did POM know at the time the consumer transaction took place that the consumer would not receive the benefit from the consumer product that POM was claiming the consumer would receive;

g.     did POM adequately disclose to consumers that the studies cited by POM as support for its health claims were paid for by POM and not independent;

h.     did POM know or should it have known that the representations and advertisements regarding the pomegranate juice or juice products were unsubstantiated, false and misleading;

i.     did POM engage in false, unfair, deceptive and/or unconscionable advertising;

j.     did POM use false, unfair deceptive and/or unconscionable representations in connecting with the sale of goods;

k.     did POM's representations cause a likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods;

l.     did POM represent that goods have a certain sponsorship, approval, characteristic, ingredient, use or benefit that they do not have;

m.     did POM represent that goods are of a particular standard, quality or grade when they are of another;

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

n.    did POM represent that the goods were available to the consumer for a reason that did not exist;

o.    did POM advertise goods with intent not to sell them as advertised;

p.    did POM disparage the goods of another by false representations of fact;

q.    did the Plaintiff and the Class Members that purchased the pomegranate juice and juice products suffer monetary damages and, if so, what is the measure of said damages;

r.    are the Plaintiff and Class Members entitled to an award of punitive damages; and

s.    are the Plaintiff and Class Members entitled to declaratory and injunctive relief.

102.    Plaintiff will fairly and adequately represent the interests of the Class in that Plaintiff is a typical purchaser of POM Juice Products. Furthermore, Plaintiff has retained competent counsel experienced in class action litigation. Plaintiff's counsel will fairly and adequately protect the interests of the Class.

103.    This class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy. The relief sought per individual member of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendants. Furthermore, it would be virtually impossible for the Class members to seek redress on an individual basis. Even if the Class members themselves could afford such individual litigation, the court system could not.

104.    Individual litigation of the legal and factual issues raised by the conduct of Defendants would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and

1  comprehensive supervision by a single court.  Given the similar nature of the Class

2  members' claims and the law applicable thereto, the Court and the parties will easily

3  be able to manage a class action.

4      105.  Prosecution of separate actions by individual Class members would

5  create the risk of inconsistent or varying adjudications, establishing incompatible

6  standards of conduct for the Defendants.

7      106.  Injunctive relief is appropriate as to the Class as a whole because

8  Defendants have acted or refused to act on grounds generally applicable to the Class

9  as a whole.

### FIRST CAUSE OF ACTION

**VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT**

**(CAL. CIV. CODE § 1750 *et seq.*)**

13      107.  Plaintiff re-alleges and incorporates herein by reference paragraphs 1

14  through 106 above as if fully set forth herein.

15      108.  Plaintiff and members of the putative Class are individuals who have

16  purchased goods (i.e., POM Juice Products) for personal use.  This cause of action is

17  asserted on behalf of a subclass of the Class comprised of those members who

18  purchased the Product since the three (3) years of the commencement of this action.

19      109.  Defendants have represented that the POM Juice Products have

20  standards, characteristics, uses, benefits, or qualities that the products do not have.

21      110.  Plaintiff has standing to pursue this claim as he has suffered injury in

22  fact and has lost money or property as a result of Defendants' actions as set forth

23  herein.  Specifically, prior to the filing of this action, Plaintiff purchased POM Juice

24  Products for her own personal use.  In so doing, he reviewed, believed, and relied

25  upon the aforementioned marketing claims.

26      111.  Plaintiff has filed concurrently herewith the declaration of venue

27  required by Civil Code Section 1780(d).

28  ///

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

970590.1

27

112.   Defendants' wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the California Consumer Legal Remedies Act since Defendants are still representing that their products have characteristics and abilities which are false and misleading, and have injured Plaintiff and the Class.

113.   Pursuant to Section 1770 of the California Civil Code, Plaintiff and the Class seek an order of this court enjoining Defendants from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including those set forth in the complaint.

114.   The Court should enjoin the Defendants from any further sales, marketing or advertisement of POM Juice Products which contain the misrepresentations detailed herein as to the standards, characteristics, uses, benefits and/or qualities of the product.  Plaintiff requests that this Court enter a permanent injunction enjoining Defendants, and their agents, servants, employees and all persons acting under or in concert with them, to cease and desist from the following acts: (a) selling, marketing, or advertising POM Juice Products with any representation or suggestion that the products have medical or health benefits; (b) selling, marketing, or advertising POM Juice Products with any representation or suggestion that the products can prevent, cure, or mitigate heart disease, prostate cancer, erectile dysfunction, or any other disease, illness or medical problem without having an adequate and reliable scientific basis for such claims; (c) selling, marketing, or advertising POM Juice Products as drugs having beneficial medicinal properties; (d) selling, marketing, or advertising POM Juice Products with any representation or suggestion that the product is "clinically tested" or "medically approved;" (e) concealing information regarding the true nature and origin of the ingredients contained in POM Juice Products; (f) selling, marketing, or advertising POM Juice Products with any representation or warranty that the products contain "100% pomegranate juice;" (g) engaging in any of the illegal, fraudulent,

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   misleading, unlawful, unfair and/or deceptive conduct described herein; and (h)

2   engaging in any other conduct found by the Court to be illegal, fraudulent,

3   misleading, unlawful, unfair and/or deceptive conduct.

4   115.   Plaintiff and the members of the putative Class have each been directly

5   and proximately injured by the conduct of Defendants, and such injury includes

6   payment for the products they purchased.

7   116.   On November 16, 2010, concurrently with filing this action, Plaintiff's

8   counsel mailed to Defendants, by certified mail, return receipt requested, the written

9   notice required by Civil Code Section 1782(a).  In the notice letter, Plaintiff

10  demanded that within thirty (30) days from the date of the letter, Defendant

11  adequately correct, repair, replace or otherwise rectify the deceptive practices

12  described in this Complaint for the entire Class, pursuant to Civil Code section

13  1770.  This includes providing notice and full compensation to consumers who have

14  purchased the Product within the Class Period.  If Defendants fail to do so, Plaintiff

15  will amend this Complaint to seek actual damages pursuant to Civil Code section

16  1782.

17  117.   Plaintiff engaged counsel to prosecute this action and is entitled to

18  recover costs and reasonable attorney's fees according to proof at trial.  Defendants

19  have failed to make or provide an appropriate correction, repair or replacement, or

20  other remedy with respect to the product.

## SECOND CAUSE OF ACTION

### VIOLATION OF UNFAIR COMPETITION ACT

### (CAL. BUS. & PROF. CODE § 17200 *et seq.*)

**(with respect to the fraudulent and unfair prongs of the Act)**

118.   Plaintiff re-alleges and incorporates herein by reference paragraphs 1

through 117 above as if fully set forth herein.

119.   The actions of Defendants, as complained herein, constitute fraudulent

and unfair practices committed in violation of the Unfair Competition Act.

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

120. Plaintiff and the putative Class members were misled into purchasing POM Juice Products by Defendants' deceptive conduct as alleged hereinabove. Plaintiff and the putative Class members were subject to Defendants' mass media advertising that POM Juice Products have medical and health benefits which the products do not have. Plaintiff relied upon the advertising in agreeing to pay for the product, thereby suffering economic injury.

121. Plaintiff and other putative Class members were mislead and, because the misrepresentations and omissions were uniform and material, presumably believed that POM Juice Products have medical and health benefits as claimed by Defendants.

122. Plaintiff requests that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair practices as provided in *Bus. & Prof. Code* § 17203, and for such other relief as set forth below.

123. Plaintiff requests that this Court enter a permanent injunction enjoining Defendants, and their agents, servants, employees and all persons acting under or in concert with them, to cease and desist from the following acts: (a) selling, marketing, or advertising POM Juice Products with any representation or suggestion that the products have medical or health benefits; (b) selling, marketing, or advertising POM Juice Products with any representation or suggestion that the products can prevent, cure, or mitigate heart disease, prostate cancer, erectile dysfunction, or any other disease, illness or medical problem without having an adequate and reliable scientific basis for such claims; (c) selling, marketing, or advertising POM Juice Products as drugs having beneficial medicinal properties; (d) selling, marketing, or advertising POM Juice Products with any representation or suggestion that the product is "clinically tested" or "medically approved;" (e) concealing information regarding the true nature and origin of the ingredients contained in POM Juice Products; (f) selling, marketing, or advertising POM Juice

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  Products with any representation or warranty that the products contain "100%

2  pomegranate juice;" (g) engaging in any of the illegal, fraudulent, misleading,

3  unlawful, unfair and/or deceptive conduct described herein; and (h) engaging in any

4  other conduct found by the Court to be illegal, fraudulent, misleading, unlawful,

5  unfair and/or deceptive conduct.

6      124.   Plaintiff engaged counsel to prosecute this action and is entitled to

7  recover costs and reasonable attorney's fees according to proof at trial.

### THIRD CAUSE OF ACTION

### VIOLATION OF UNFAIR COMPETITION ACT

### (CAL. BUS. & PROF. CODE § 17200 et seq.)

### (with respect to the unlawful prong of the Act)

12     125.   Plaintiff re-alleges and incorporates herein by reference paragraphs 1

13  through 124 above as if fully set forth herein.

14     126.   The actions of Defendants, as complained herein, constitute illegal and

15  unlawful practices committed in violation of the Unfair Competition Act.

16     127.   Defendants have unlawfully manufactured, packaged, labeled and/or

17  distributed POM Juice Products in violation of the California Health & Safety Code,

18  in that:

19        (a)   Defendants have disseminated false advertisements of

20  POM Juice Products in that the product advertising and packaging

21  contain false or misleading statements as to the purported ability of the

22  products to prevent, mitigate and/or cure various diseases, illnesses and

23  medical conditions, in violation of California Health & Safety Code §§

24  110290 and 110390 *et seq.*;

25        (b)   POM Juice Products are misbranded because the product

26  labeling does not conform with the requirements for nutrition labeling

27  as required by California Health & Safety Code §§ 110665 and 110705;

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

970590.1

(c)   POM Juice Products are misbranded because the product labeling does not conform with the requirements for nutrient content or health claims as required by California Health & Safety Code § 110670;

(d)   POM Juice Products are unlawfully labeled in violation of California Health and Safety Code § 114089;

(e)   POM Juice Products are unlawfully labeled in violation of California law as the labeling is false and/or misleading in claiming or implying that the products are doctor approved and clinically tested; and,

(f)   POM Juice Products are unlawfully labeled in violation of California law as the labeling suggests that the product is safe and effective for its intended use when such evidence has not been established.

128.   Plaintiff and the putative Class members suffered injury in fact and monetary damage in that they purchased the products which were being sold illegally during the four years prior to the filing of this Complaint.

129.   Plaintiff requests that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such illegal practices as provided in Bus. & Prof. Code § 17203, and for such other relief as set forth below.

130.   Plaintiff requests that this Court enter a permanent injunction enjoining Defendants, and their agents, servants, employees and all persons acting under or in concert with them, to cease and desist from the following acts: (a) selling, marketing, or advertising POM Juice Products with any representation or suggestion that the products have medical or health benefits; (b) selling, marketing, or advertising POM Juice Products with any representation or suggestion that the products can prevent, cure, or mitigate heart disease, prostate cancer, erectile

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  dysfunction, or any other disease, illness or medical problem without having an

2  adequate and reliable scientific basis for such claims; (c) selling, marketing, or

3  advertising POM Juice Products as drugs having beneficial medicinal properties; (d)

4  selling, marketing, or advertising POM Juice Products with any representation or

5  suggestion that the product is "clinically tested" or "medically approved;" (e)

6  concealing information regarding the true nature and origin of the ingredients

7  contained in POM Juice Products; (f) selling, marketing, or advertising POM Juice

8  Products with any representation or warranty that the products contain "100%

9  pomegranate juice;" (g) engaging in any of the illegal, fraudulent, misleading,

10  unlawful, unfair and/or deceptive conduct described herein; and (h) engaging in any

11  other conduct found by the Court to be illegal, fraudulent, misleading, unlawful,

12  unfair and/or deceptive conduct.

13      131.   Plaintiff engaged counsel to prosecute this action and is entitled to

14  recover costs and reasonable attorney's fees according to proof at trial.

## FOURTH CAUSE OF ACTION

### UNTRUE AND MISLEADING ADVERTISING

### (CAL. BUS. & PROF. CODE § 17500, et seq.)

18      132.   Plaintiff re-alleges and incorporates herein by reference paragraphs 1

19  through 131 above as if fully set forth herein.

20      133.   This cause of action is asserted on behalf of a subclass of the Class,

21  comprised of those members who purchased POM Juice Products since the three (3)

22  years of the commencement of this action.

23      134.   Defendants engaged in the deceptive conduct alleged hereinabove,

24  which included deceptive and untrue representations regarding POM Juice Products,

25  representations made to induce the public to purchase the product.

26      135.   Defendants were aware, or by the exercise of reasonable care should

27  have been aware, that the representations were untrue or misleading.

28  / / /

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

136.  Pursuant to Bus. & Prof. Code § 17535, Plaintiff and members of the putative Class are entitled to remedies as set forth above and below.

### FIFTH CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY

### (CAL. U. COMM. CODE §§ 2314, 2315 and Common Law)

137.  Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 136 above as if fully set forth herein.

138.  This cause of action is being asserted on behalf of Plaintiff and the putative Class members who purchased the product within the applicable statute of limitations period.

139.  POM Juice Products were sold with the implied warranty of merchantability in that the products would pass without objection in the trade, are fit for the ordinary purpose for which they are used, are adequately contained, packaged, and labeled, and conform to the promises or affirmations of fact made on the containers and labels.  POM Juice Products do not meet the foregoing criteria.

140.  POM Juice Products were sold with the implied warranty of fitness in that Defendants had reason to know of the particular purpose for which the products were required, and Plaintiff and the putative Class members relied upon Defendants' skill and judgment to furnish suitable goods.  The POM Juice Products are not suitable for the purpose for which they were required and sold.

141.  The defects in the products existed prior to the delivery of the products to Plaintiff and the putative Class members.

142.  Plaintiff provided Defendants with notice of his warranty claims, on behalf of himself and the putative Class members, by virtue of the notice letter sent to Defendants on November 16, 2010.

143.  Plaintiff and the putative Class members have incurred damages as described herein as a direct and proximate result of the defective products and Defendants' breach of the implied warranties, in that Plaintiff and the putative Class

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  have paid the purchase price for the defective products. Plaintiff, on behalf of

2  himself and the Class members, has requested that Defendants correct the defect.

3  Plaintiff is informed and believes that Defendants will refuse to do so.

4     144.  Plaintiff and the putative Class members are entitled to refund of the

5  purchase price of the products, consequential and incidental damages, costs and

6  expenses, including attorney's fees.

## SIXTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

### (CAL. U. COM. CODE § 2313)

10    145.  Plaintiff re-alleges and incorporates herein by reference paragraphs 1

11  through 144 above as if fully set forth herein.

12    146.  POM Juice Products were sold with express warranties as Defendants

13  made express affirmations of fact and promises regarding the alleged medicinal

14  properties of the product.

15    147.  Defendants represent that the products can prevent, mitigate and/or

16  cure various diseases, illnesses and medical conditions. The products were sold

17  with express warranties because Defendants' descriptions of the products on the

18  packaging and in mass media advertising (i.e., as having stated medical and health

19  benefits) were intended to become part of the basis of the bargain. The POM Juice

20  Products are not suitable for the purpose for which they were required and sold as

21  the products do not in fact possess the medical and health benefits claimed by

22  Defendants.

23    148.  The defects in the products existed prior to the delivery of the products

24  to Plaintiff and the putative Class members.

25    149.  Plaintiff, on behalf of himself and the putative Class members,

26  provided Defendants with notice of his and the putative Class members' warranty

27  claims by virtue of the letter sent to Defendants on November 16, 2010.

28    150.  Plaintiff and the putative Class members have incurred damages as

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

described herein as a direct and proximate result of the defective products and Defendants' breach of their express warranties, in that Plaintiff and the putative Class have paid the purchase price for the defective products.  Plaintiff, on behalf of himself and the putative Class members, has requested that Defendants correct the defects and refund amounts paid for the defective products.  Plaintiff is informed and believe that Defendants will refuse to do so.  Plaintiff and the putative Class members are entitled to refund of the purchase price of the products, consequential and incidental damages, costs and expenses, including attorney's fees.

## SEVENTH CAUSE OF ACTION

## COMMON LAW RESTITUTION FOR UNJUST ENRICHMENT

151.   Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 150 above as if fully set forth herein.

152.   This cause of action is being asserted on behalf of Plaintiff and the putative Class members who purchased POM Juice Products within the applicable statute of limitations period.

153.   Defendants have benefited and have been unjustly enriched by their wrongful conduct alleged hereinabove.  Defendants have sold POM Juice Products to Plaintiff and members of the putative Class based upon deceptive conduct and misrepresentations as to uses and qualities which the products do not possess and which Defendants were, and still are, aware the products do not possess.

154.   Defendants have knowledge of this benefit, and have voluntarily accepted and retained this benefit.

155.   The circumstances as described herein are such that it would be inequitable for Defendants to retain these ill-gotten benefits without paying the value thereof to Plaintiff and the putative Class members.

156.   Plaintiff and the putative Class members are entitled to the amount of Defendants' ill-gotten gains, including interest, resulting from their unlawful, unjust and inequitable conduct as described above.

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and as representative of all other persons similarly situated, prays for judgment against Defendants, as follows:

1.   An Order certifying the Class and any appropriate sub-class thereof, and appointing Plaintiff and his attorneys to represent the Class;

2.   An Order that notice of class certification and of any relief to be disseminated to all Class Members and for such other further notices as this Court deems appropriated under Fed. R. Civ. P. 23(d)(2);

3.   An Order requiring complete and immediate disclosure of all studies, reports, analyses, data, compilations, and other similar information within the possession, custody, or control of Defendants concerning, relating to, or involving the purported health benefits of POM Juice Products;

4.   An Order barring Defendants from destroying or removing any computer or similar records which record evidence related to the purported health benefits of POM Juice Products;

5.   An Order barring Defendants from attempting, on their own or through their agents, to induce any putative Class Members to sign any documents which in any way releases any of the claims of any Putative Class Members;

6.   An Order requiring Defendants to engage in a corrective advertising campaign;

7.   An award of general damages according to proof;

8.   An award of special damages according to proof;

9.   An award of punitive damages in an amount sufficient to deter and make an example of Defendants;

10.   An award of restitution in an amount according to proof;

11.   Disgorgement in an amount according to proof;

///

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1       12.   A temporary restraining Order, a preliminary injunction and a

2  permanent injunction enjoining Defendants, and their agents, servants, employees

3  and all persons acting under or in concert with them, to cease and desist from the

4  following acts:  (a) selling, marketing, or advertising POM Juice Products with any

5  representation or suggestion that the products have medical or health benefits; (b)

6  selling, marketing, or advertising POM Juice Products with any representation or

7  suggestion that the products can prevent, cure, or mitigate heart disease, prostate

8  cancer, erectile dysfunction, or any other disease, illness or medical problem

9  without having an adequate and reliable scientific basis for such claims; (c) selling,

10  marketing, or advertising POM Juice Products as drugs having beneficial medicinal

11  properties; (d) selling, marketing, or advertising POM Juice Products with any

12  representation or suggestion that the product is "clinically tested" or "medically

13  approved;" (e) concealing information regarding the true nature and origin of the

14  ingredients contained in POM Juice Products; (f) selling, marketing, or advertising

15  POM Juice Products with any representation or warranty that the products contain

16  "100% pomegranate juice;" (g) engaging in any of the illegal, fraudulent,

17  misleading, unlawful, unfair and/or deceptive conduct described herein; and (h)

18  engaging in any other conduct found by the Court to be illegal, fraudulent,

19  misleading, unlawful, unfair and/or deceptive conduct;

20       13.   Reasonable attorneys' fees;

21       14.   Costs incurred herein; and,

22       15.   All general, special, and equitable relief to which the Plaintiff and the

23  members of the Classes are entitled by law.

24  ///

25  ///

26  ///

27  ///

28  ///

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

970590.1

PUTATIVE CLASS ACTION COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED: November 15, 2010

Respectfully submitted,

**WASSERMAN, COMDEN,**
**CASSELMAN & ESENSTEN, L.L.P.**
MELISSA M. HARNETT
GREGORY B. SCARLETT
JORDAN S. ESENSTEN

By: _____
          JORDAN S. ESENSTEN
Attorneys for Plaintiff JEFF FRIEDMAN, and
all others similarly situated

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

970590.1

PUTATIVE CLASS ACTION COMPLAINT

# EXHIBIT A



## 100% PURE POMEGRANATE JUICE.

It's 100% pure! It's heroically healthy! It's The Antioxidant Superpower, POM Wonderful 100% authentic pomegranate juice.

Backed by $25 million in medical research. Proven to fight for cardiovascular, prostate and erectile health. Committed to keeping you healthy for a good, long time!

# EXHIBIT B



# EXHIBIT C



# EXHIBIT D



# EXHIBIT E




   

Categories

03/30/2009

## Striking Out On Your Own

# Newsweek

Read the latest Lynda Resnick interview in Newsweek's Nick Summers. Lynda is the founder of POM and answers the question, is now a good time to start a company? Absolutely...

TrackBack

Comments

Post a comment

Links

Archives



# Newsweek

# Striking Out On Your Own

**Is now a good time to start a company? Absolutely, says Lynda Resnick, the founder of Fiji Water and POM Wonderful.**

**Nick Summers**
**Newsweek Web Exclusive**

When Lynda Resnick brings her own water to an interview, she really brings her own. That is, when she produces a bottle of F ji, she owns the entire company—as well as POM Wonderful, maker of pomegranate juice and antioxidant supplements. She's a serial entrepreneur who also owns the Teleflora floral service and a number of other ventures. Resnick's new book, Rubies in the Orchard, details a lifetime acquiring businesses and transforming them with a keen eye for value, marketing and community. The writing can be flat—especially compared with how charismatic Resnick is in person—but the ideas are so sound, and the track record so full of success, that the book is still a fun read, and highly instructive to anyone wishing to start a business in these bleak times. Resnick spoke to NEWSWEEK's Nick Summers about the Bush administration's economic legacy, balancing risk with reward and why now is a great time to be running your own business. Excerpts:

**How long were you working on the book?**
Of course it took me my whole life, but six months. I turned in the manuscript, and my editor said it was the cleanest he'd ever seen. I thought, "Is that a compliment?" The corrections took about half an hour; that was it. There was a page and a half that he took out that was a little too strident.

**What was it strident about?**
I got carried away. The Bush administration—I was hysterical during the entire eight years. Beating my chest, crying, screaming at the television. I saw the end. I did. I have a Cassandra complex. Do you know who Cassandra was?

**I do!**
And do you know what happened when she broke up with Apollo, what he did to her?

**I don't.**
He gave her the gift of prophecy, but made it so that no one would believe her.

**So you saw the end—of what?**
I didn't see the debacle the way it is today, but I did—every time the stock market went up another 300 points, I would get sick. I was very upset, because I've lived through so many bubbles. I knew that there was no way that this was going to last. You can't expect to make 20 percent a year, year in and year out.

**Why did you write the book? Who was the target audience?**
I wrote it, I hope, for small- to medium-size businesses, although Wall Street could learn a lot from it. But also, will they? I talk about the tyranny of instant gratification that our country has gone through over the last 20 years. Running companies for quarterly profits is not a long-term game, as we've seen. So my concept is, if you have a product or business or service, you have to make sure you have true intrinsic value in what you're selling. You have to figure out where that value resides—is it your technology, is it some invention that you've made? Is it the fact that your water fell as rain 200 years ago? Is it the fact that your pomegranate has healing properties?

Then communicate that value. You have to have a unique selling proposition, something that sets you apart from the other people in your realm. If you're a dry cleaner, is your front office as pristine as the clothes you're returning? If it's a movie theater, maybe it's an art theater, showing films that they can't get somewhere else? Community and transparency can level the playing field. Small businesses are not burdened with

Striking Out On Your Own | Print Article | Newsweek.com

the overhead and the debt of a big business—they can zoom in with their disruptive technology and take over. There was no chance for small business up until recently; it was very hard to come to market with your new idea. Nobody was interested; they wanted to write fancy derivatives and instruments that were going to make it quick on Wall Street. But today there's a real opening, and it's a good day for small business.

**So there's reason for optimism, for entrepreneurs with an idea for a business? And what about taking risks in general?**
What do they have to lose? They may as well go for it. They're not going to see another opening like this. Investing in your own business is what we've always done; we've never been a public company. Who are you going to believe in more than yourself?

Now, I disagree that we should be spending. I'm not, and believe me, I love to. Now I'm very cautious about what I'm buying. I used to buy at the auction houses all the time. We have a big art collection, but I'm not doing it, man. I don't need it. I don't need another thing. Cash is king. If we start saving, we may be able to finance our own future. So it's OK, pull in your belt a little bit.

**What else should entrepreneurs consider about today's economy?**
The wonderful thing about the Internet is that it wasn't there during the last depression. It's the No. 1 thing that I think will save us. Let's say you have a great idea that you've invented: the best mousetrap. How easy it is today to comb the Web and find out if someone else has done that mousetrap. A piece of cake; I could do that in 20 minutes. Then you could go to zoomerang.com, which is a market-research Web site. For $20 a month, you can find your target market and ask, "How do you feel about this mousetrap? Is this the mousetrap you've longed for? The roach hotel that will make your life easy?" Then, you're ready to go to your patent attorney. And there are also cheap patent attorneys online.

**You write that you despise the phrase "think outside the box."**
Because the answer's inside the box. The answer to your problem is always inside the box. It's always understanding the intrinsic value again of your product or service. Look there for your marketing answer. Take Fiji Water. Smartwater got Jennifer Aniston to be their spokesperson for millions of dollars. But every celebrity drinks my water. I just take the pictures from Us and Touch, or whatever the hell those magazines are called, and put those on our Web site.

**I hate "think outside the box" too.**
People don't like the obvious—it's like, boring. It's "boring" to think of value, "boring" to think of unique selling proposition, "boring" to think of community and hard work. "We should have this big idea that's just going to transport us to riches!" But it isn't like that, especially now. Hard work is back—with a vengeance.

**That's probably a good lesson for almost everyone.**
I realized after reading [Malcolm Gladwell's] "Outliers" why I did so well when I started [business] at 19. By the time everyone else was graduating from an MBA program, I had been in business for so many years that I was ahead of the pack.

**Do you still have an inner competitiveness to stay on top of the business world? Are you still looking to buy new companies or start new ones?**
Sure, yeah!

**Always? Till you drop dead?**
Well, yeah! I have no plans to retire. You think it's undignified for a woman my age to still be working? There's so much need in this world, how can I not? If I can motivate a person that comes to one of my lectures, that's something. [Coughs, clears throat] Excuse me. My vitamins. I take POMs.

**Should I take vitamins?**
I don't know your family history. How's your father?

**He's in good health. Had a bout of prostate cancer, but that's—**
You have to be on pomegranate juice. You have a 50 percent chance of getting it. Listen to me. It is the one thing that will keep your PSA normal. You have to drink pomegranate juice. There is nothing else we know of that will keep your PSA in check. Ask any urologist—your father should be on it. Your father should be on it. I'm sorry to do this to you, but I have to tell you. We just did a study at UCLA, on 43 men ... it arrested their PSA. How old are you, 28?

**Twenty-six.**
Get a base line now. [Pause, wink] It's also 40 percent as effective as Viagra. Not that you need it.

Striking Out On Your Own | Print Article | Newsweek.com

But—couldn't hold

URL: http://www.newsweek.com/id/190063

© 2009

5/11/2009 4:23 PM

# EXHIBIT F



# EXHIBIT G

55



# EXHIBIT H

57



# POMx is the first and only pomegranate antioxidant supplement reviewed for safety by the FDA.

POMx™ is a highly concentrated, incredibly powerful blend of all-natural polyphenol antioxidants made from the very same pomegranates in POM Wonderful 100% Pomegranate Juice. In fact, our method of harnessing astonishing levels of antioxidants is so extraordinary, it's patent-pending.



**The power of POM. Now in one little pill.™**

All of the antioxidant power of an 8oz glass of POM Wonderful 100% Pomegranate Juice is now available in the convenience of a single calorie-free pill. Take one daily. Each bottle contains a one-month supply of 30 pills.

# EXHIBIT I

# Our antioxidants make other antioxidants feel inferior.



fact 1 More polyphenol antioxidants than any other 100% pomegranate supplement

fact 2 An astonishing 1000mg of natural pomegranate polyphenol extract in every pill

fact 3 The antioxidant power of an 8oz glass of our juice, in a calorie-free pill

fact 4 Made from the same California pomegranates in POM Wonderful 100% Pomegranate Juice

## Why take an antioxidant supplement?

Let's start with the problem: free radicals. Emerging science tells us these unstable molecules aggressively destroy healthy cells in your body and may be linked to everything from the wrinkles we get as we age to more serious health threats like cancer and heart disease. In fact, scientists have already linked free radicals to as many as 60 different types of diseases.

## Fighting free radicals.

Where do free radicals come from? Everywhere. They're formed by exposure to alcohol, sunlight, tobacco smoke, air pollution, pesticides and oven fried foods. That's where antioxidants come in. Science tells us that pomegranate antioxidants neutralize free radicals, helping to prevent the damage that can lead to disease. In the fight against free radicals, POMx is the Antioxidant Superpill.™

## Not all antioxidants are equal.

POMx is made from pomegranates only—nothing else. When other supplements add non-pomegranate ingredients or even other antioxidants, they can disrupt the balance of molecules that nature intended the pomegranate to have. The polyphenol antioxidants in POMx are as natural and unadulterated as those in our fresh, California-grown POM Wonderful Pomegranates.

61

"Findings from a small study suggest that pomegranate juice may prove an effective weapon against prostate cancer."

*The New York Times (July 4, 2006)*

### Prostate health.

Prostate cancer is the most commonly diagnosed cancer among men in the United States and the second-leading cause of cancer death in men after lung cancer.

### Time pill.

Stable levels of prostate-specific antigens (or PSA levels) are critical for men with prostate cancer. Patients with quick PSA doubling times are more likely to die from their cancer. According to a UCLA study of 46 men age 65 to 70 with advanced prostate cancer, drinking an 8oz glass of POM Wonderful 100% Pomegranate Juice every day slowed their PSA doubling time by nearly 350%.

83% of those who participated in the study showed a significant decrease in their cancer regrowth rate.

### One small pill for mankind.

New studies are under way to further investigate the possibilities of POM Wonderful pomegranate antioxidants and their potential ability to slow the rise of PSA levels in patients with prostate cancer.

To learn more, visit pompills.com/research

"The most abundant and most active ingredients in pomegranate juice are also found in POMx. Basic studies indicate that POMx and POM Wonderful Pomegranate Juice may have the same effects on prostate health."

*David Heber, MD, PhD, Professor of Medicine and Director, UCLA Center for Human Nutrition*



## "POM Wonderful Pomegranate Juice has been proven to promote cardiovascular health, and we believe that POMx may have the same health benefits."

*Dr. Michael Aviram, Lipid Research Laboratory,
Technion Faculty of Medicine, Haifa, Israel*

**Heart health.**

In two groundbreaking preliminary studies, patients who drank POM Wonderful 100% Pomegranate Juice experienced impressive cardiovascular results. A pilot study at the Rambam Medical Center in Israel included 19 patients with atherosclerosis (clogged arteries). After a year, arterial plaque decreased 30% for those patients who consumed 8oz of POM Wonderful 100% Pomegranate Juice daily.

An additional study at the University of California, San Francisco included 45 patients with impaired blood flow to the heart. Patients who consumed 8oz of POM Wonderful 100% Pomegranate Juice daily for three months experienced a 17% improvement in blood flow. Initial studies on POMx share similar promise for heart health, and our research continues.



*fig-1 THE START*

## The POMx Difference

### Ultra-Potent:

- 1000mg of natural pomegranate polyphenol extract in every pill
- More antioxidants than any other pomegranate supplement

### Natural:

- Made from pomegranates and nothing else

- One POMx pill = the antioxidant power of 8oz of POM Wonderful 100% Pomegranate Juice
- Your daily antioxidants in a single pill
- A full spectrum of pomegranate polyphenol antioxidants

### Science, Not Fiction:

- No synthetic or other antioxidants added
- No sugar, artificial colors or preservatives
- Calorie-free, vegan, kosher

- Made from the only pomegranate backed by $20 million in medical research and the POM Wonderful brand
- Promotes heart and prostate health
- Guards your body against free radicals
- Proven to be easily absorbed
- Clinically tested on adults

To access the original published studies mentioned,
visit pompills.com/research

# EXHIBIT J

# HEALTHY. ~~WEALTHY.~~ AND WISE.
## ( 2 OUT OF 3 IN THIS ECONOMY AIN'T BAD. )



**Antioxidants are a necessity. Not a luxury.**

Emerging science suggests that antioxidants are critically important to maintaining good health because they protect you from free radicals, which can damage your body. Taking one POMx pill a day will help protect you from free radicals and keep you at your healthy best. Even when you're going through the worst.



**Recession-proof your health with POMx.**

POMx is an all-natural, ultra-potent antioxidant extract. Containing a full spectrum of pomegranate polyphenols, POMx is so concentrated that a single capsule has the antioxidant power of a full glass of POM Wonderful 100% Pomegranate Juice.

**Superior science. Superior research. A sound investment.**



POMx is made from the only pomegranate backed by $25 million in medical research at the world's leading universities.

Not only has this research discovered the unique and superior antioxidant power of pomegranate, it has revealed promising results for prostate and cardiovascular health.

**Hope for the future. Yours.**

Our POMx pills are made from the same pomegranates we use to make our POM Wonderful 100% Pomegranate Juice, on which each of the following medical studies was conducted.

An initial UCLA study on our juice found hopeful results for prostate health, reporting "statistically significant prolongation of PSA doubling times," according to Dr. Allan J. Pantuck in Clinical Cancer Research, '06.

Two additional preliminary studies on our juice showed promising results for heart health. "Stress-induced ischemia (restricted blood flow to the heart) decreased in the pomegranate group," Dr. Dean Ornish reported in the American Journal of Cardiology, '05.

"Pomegranate juice consumption resulted in significant reduction in IMT (thickness of arterial plaque) by up to 30% after one year," said Dr. Michael Aviram in Clinical Nutrition, '04.

**Try POMx Monthly FREE for ONE MONTH.** We'll even pay for the shipping.

**Order Now 888-766-7455 or pompills.com/ph**
Use discount code PH90

# EXHIBIT K



# The antioxidant superpill.

## 1000 milligrams. 0 calories.

Ready to take your antioxidants into your own hands? Introducing POMx™ – a highly concentrated, incredibly powerful blend of all-natural polyphenol antioxidants, made from the same pomegranates as POM Wonderful® 100% Pomegranate Juice.

POMx fights free radicals with a powerful 1000 milligrams. That's more concentrated polyphenol antioxidants than any other pomegranate supplement. And POMx is the first and only antioxidant supplement reviewed for safety by the FDA.





POMx is made from the only pomegranate backed by $32 million in medical research. These are the same pomegranates we use to make our POM Wonderful 100% Pomegranate Juice, on which each of the following medical studies was conducted. An initial UCLA MEDICAL STUDY on POM Wonderful 100% Pomegranate Juice found *hopeful results for prostate health.* The study reports *"statistically significant prolongation of PSA doubling times,"* according to Dr. Allan J. Pantuck in Clinical Cancer Research, 2006. Two additional preliminary studies on our juice found *promising results for heart health.* "Stress-induced ischemia decreased in the pomegranate group," Dr. Dean Ornish reported in the American Journal of Cardiology, 2005. "Pomegranate juice consumption resulted in a significant IMT reduction by up to 30% after one year," said Dr. Michael Aviram, referring to reduced arterial plaque in Clinical Nutrition, 2004.

ORDER NOW: 1-888-POM-PILL (766-7455) or www.pompills.com/fsin

### Try POMx for one month – FREE!
We'll even pay for the shipping.
Visit pompills.com/fsin or call 1-888-POM-PILL, the discount code: FSIN





Exhibit K

# EXHIBIT L



POMx Heart Newsletter
Pills and Liquid
Monthly
2nd Continuity Shipment

Summer '07–preset (ongoing)

## POMx YOUR PARTNER IN PROMOTING LIFELONG HEALTH

VOLUME 1, ISSUE 1: FOR YOUR HEART

### What's New in the Lab by Dr. Mark Dreher



**Mark Dreher, PhD
Chief Science Officer
POMWonderful, LLC**

Hi, I'm Dr. Mark Dreher, Chief Science Officer at POM, and your guide to continuing new research on the benefits of POMx and POM Wonderful pomegranates as they relate to your health. Welcome to Your First Issue of the POMx Newsletter! There's more to come, so please stay tuned in the coming months for:...

Future newsletters will contain content derived from these questions and reader feedback. We look forward to hearing from you!

♥ ♥ ♥

### Enjoy Your Life With a Healthy Heart

According to the American Heart Association (AHA), at least 58.8 million Americans suffer from some form of heart disease. Maintaining a healthy heart by reducing your risk for cardiovascular disease should be at the core of many lifelong



### What's New in the Lab
### by Dr. Mark Dreher



**Mark Dreher, PhD**
**Chief Science Officer**
**POMWonderful, MS**

### Enjoy Your Life With a Healthy Heart

# EXHIBIT M

POMx Prostate Newsletter
Pills and Liquid
Monthly
3rd Continuity Shipment

*Feel 'or - present (ongoing)*

## PO♥Mx  YOUR PARTNER IN PROMOTING LIFELONG HEALTH

VOLUME 1, ISSUE 2: PROSTATE HEALTH

### Prostate Cancer Affects 1 Out of Every 6 Men

Prostate cancer is the second leading cause of cancer related death in men in the United States according to the National Cancer Institute. Prostate cancer incidence rates rose dramatically in the late 1980's with improved detection and diagnosis through widespread use of prostate-specific antigen (PSA) testing.

---

**Prostate cancer is the second leading cause of**

fruits and vegetables. Doctors are not sure which of these factors causes the risk to go up but the best advice is to consume daily the equivalent of five or

(continued on back)

### What's New in the Lab by Dr. Mark Dreher



Mark Dreher, PhD
Chief Science Officer
POMWonderful, LLC

Research studies like the ones discussed in this newsletter and



**PCM** YOUR PARTNER IN PROMOTING LIFELONG HEALTH

### Prostate Cancer Affects 1 Out of Every 6 Men

Prostate cancer is the second leading cause of cancer related death in men in the United States according to the National Cancer Institute. Prostate cancer incidence rates rose dramatically in the late 1980's with improved detection and diagnosis through widespread use of prostate-specific antigen (PSA) testing.

> Prostate cancer is the second leading cause of cancer related to death in men in the United States according to the National Cancer Institute.

Since the early 1990's, prostate cancer incidence and deaths have been declining, but the American Cancer Society estimates that there will still be about 218,890 new cases of prostate cancer and 27,050 deaths in the United States in 2007.

According to the American Cancer Society, some of the risk factors for prostate cancer include:

**Age** – Growing older raises a man's risk of prostate cancer. About two of every three prostate cancers are found in men over the age of 65.

**Family history** – Men with close family members (father or brother) who have had prostate cancer are more likely to get it themselves, especially if their relatives were young when they got the disease.

**Diet** – Our risk factor that can be changed is diet. The National Cancer Institute's research suggests that obesity and weight gain is linked to increased prostate cancer mortality.

Men who eat a lot of red meat or high-fat dairy products seem to have a greater chance of getting prostate cancer. These men also tend to eat fewer fruits and vegetables. Doctors are not sure which of these factors causes the risk to go up but the best advice is to consume daily the equivalent of five or *(continued on back)*

### What's New in the Lab by Dr. Mark Dreher



Mark Dreher, PhD
Chief Science Officer
PCMWonderful, MD

Research studies like the ones discussed in this newsletter and conducted by UCLA have sparked news to validate the many reasons we are proud to be affiliated with PCM Wonderful and POMs.

PCM Wonderful 100% Pomegranate Juice and POMs are backed by a $25 million dollar investment in world-class scientific research. This includes ten clinical studies published in peer-reviewed medical journals that document the pomegranate's antioxidant health benefits such as heart and prostate health.

Working at PCM Wonderful gives me the unique opportunity to study make a difference in the world. That's what gets me up every morning. I get to work with renowned scientists, including a Nobel Laureate, at leading

> Studies funded by POMs represent the vast majority of medical research ever conducted on pomegranates.

universities around the world. In fact, studies funded by PCM represent the vast majority of human medical research ever conducted on pomegranates. No other company that I know of is as dedicated as PCM to proving the truth and keeping our customers informed.

At PCM Wonderful, we aim to be your partner in the promotion of good health that lasts a lifetime. It is our commitment to you, our valued customer.